Battle, J.
 

 The river Neuse, at the place where plaintiff’s toll-bridge spans it, is a navigable stream, and being so, the defendants bad the right to navigate it with their boats, at all times, without obstruction from any person, unless such obstruction were authorised by the sovereign power; this sovereign power would have been the General Government, had the congress of the United States passed any act in relation to this river, in execution of the power “ to regulate commerce with foreign nations and among the several States;” Con. of U. S. Art. 1, sec. 8 ;
 
 Wilson
 
 v.
 
 Blackbird Creek Marsh Company,
 
 2 Peters’ Rep. 248, (8 Curtis, 105). But as no such act was ever passed by congress, the legislature of this State is the only sovereign under whose authority a bridge, or any
 
 *293
 
 any thing else, could be erected, whereby -any impediment to the free navigation of the river could be created;
 
 State
 
 v.
 
 Dibble,
 
 4 Jones’ Rep. 107;
 
 The State of Pennsylvania v. The Wheeling and Belmont Bridge Company,
 
 18 Howard’s Rep. at p. 432.
 

 It cannot be doubted that the toll-bridge, owned by the plaintiff’s intestate, was, in the condition in which it was proved to be at the trial, a serious obstruction to the passage •of steam, and other boats, up and down the fiver. The question then is, whether the owner had any authority from the Legislature to put it there, and keep it up in the condition described.® He contends' that he had .-such authority under the 28th section of the 101st chapter of the Revised Code, which enacts that “in all cases where the proprietor of a ferry shall prefer building a good and substantial bridge over any water-course, instead of keeping a ferry, he may do so, and may claim and hold such bridge under the same rights, and in the same manner, by which the ferry is claimed and held, <&c.,” with a proviso, however, “ that on all such bridges the proprietor shall erect a draw where the free navigation of the stream may require it.” The erection of .the bridge is undoubtedly-authorised by this act, and it is equally clear that the owner was bound to erect, and keep in good repair, -a draw sufficient to allow of the free navigation -of the river. The Legislature, in requiring the draw, recognises the superior .claims of the right ef navigation, which, by the general law, is a right paramount to all others. Thus it was held in
 
 Lewis
 
 v. Keeling, 1 Jones’ Rep. 299, “ that the right of navigation is paramount, because it is of most importance to the public weal.” In that case the superiority of the right of navigation was asserted over that of fishing, but the same principle •“ that it is of the most importance to the public weal,” will give it the preference over all other conflicting rights.
 

 This being established, we think that a fair construction of the act, according to its spirit and intent, requires us to hold that it was imposed upon the owner of the bridge, not only to erect, and keep in ¡good repair, a draw sufficient for the
 
 *294
 
 purposes of a free navigation of the stream, but also to provide the means for raising it, and to have it raised, when steam-boats and other vessels were passing. It is manifestly putting the right of the owner of the bridge above that of the navigators of the river, to subject the latter to the necessity of stopping their boats and raising the draw with their own hands, thereby causing them much delay, and oftentimes exposing them to danger; and we are surprised that they have submitted patiently to the inconvenience so long.
 

 But perhaps it may be said that this construction of the act will very much impair, if it do not destroy, the value of toll-bridges across navigable streams, by requiring the owners of them to keep hands to raise the draw when boats are passing. If so, it must be submitted to as the necessary result of enforcing the paramount right of navigation, which, as we have seen, is for the
 
 public weal.
 
 But we do not believe that it will necessarily produce that effect. The owner of a toll-bridge must have a keeper attending at the bridge for the purpose of collecting his tolls. If we are not much mistaken, the draw may be constructed in such a manner as, by the aid of proper machinery, to be easily raised by the keeper; or at least by him with very little other assistance. But whether this is so or not, the paramount right of navigation must be maintained, even though it may be at the expense of other rights.
 

 This view of the case makes it unnecessary for us to decide _ any other question raised in the argument.
 

 Pee Cukiam, Judgment reversed, and a
 
 venire ele novo
 
 awarded.